IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.  Case Nos.:   3:09cr19/MCR/EMT
 3:11cv170/MCR/EMT

RICHARD ALLEN WEEKS

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's "Amended Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255" (doc. 56). The Government has filed a response (doc. 59), and Defendant has filed a reply (doc. 65). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

### PROCEDURAL BACKGROUND[1]

On February 17, 2009,[2] Defendant was charged in a two-count indictment with receiving and attempting to receive child pornography via computer ("Count One") and possession of child pornography ("Count Two") (doc. 13). On March 27, 2009, represented by Assistant Federal Public

---

[1] Detailed statements of facts describing the offense conduct are set forth in the Presentence Investigation Report ("PSR") (doc. 59, exh. A), and will be set forth herein only as relevant to disposition of the instant motion.

[2] A criminal complaint was filed on January 22, 2009 (doc. 1).

Defender Randall Lockhart, Defendant entered a guilty plea to both counts of the indictment pursuant to a written plea agreement (*see* docs. 23, 24, 25).

At the plea proceeding, the court clarified that the distinction between the two charges was that Count One involved receipt of child pornography via computer, whereas Count Two charged Defendant with the knowing possession of child pornography (doc. 42 at 2–3).[3] The court explained to Defendant how the proceedings would unfold and informed Defendant that at any point until he actually entered his guilty plea, he could decide to change his mind and continue with a not guilty plea (*id*. at 7–8). It explicitly told him that after he entered the guilty plea and the court accepted it, he could not withdraw it (*id*. at 8). Defendant acknowledged that he understood (*id*.). The court advised Defendant of the rights that he was giving up by entering a guilty plea, including the right to have a jury decide issues related to his guilt or sentencing (*id*. at 8–11). Defendant stated that he had discussed his rights with his attorney and he understood the rights he would be waiving by entering a guilty plea (*id*. at 11). Defendant told the court that he and his attorney had reviewed all three of the documents comprising his written plea agreement on multiple occasions, and he acknowledged his signature on the documents (*id*. at 12). He also assured the court that all of the questions he had about the agreement had been answered by counsel and that he had no need for further consultation (*id*. at 12–13).

Although the court did not read the documents word for word to Defendant in light of his assurances of understanding, the court did discuss the potential penalties he faced (doc. 42 at 13). Specifically, it told him that with respect to Count One, he faced a mandatory minimum term of five years and up to 20-years imprisonment, followed by a maximum term of supervised release of life, and with respect to Count Two, that he faced up to ten years imprisonment and up to a life term of supervised release (*id*.). Defendant acknowledged that he understood these penalties (*id*.). The court also explained the factors it would take into consideration in its sentencing analysis, and told Defendant that because he was pleading guilty to two counts, his sentence could run consecutively (*id*. at 14–15). The court also told Defendant that no one could tell him what his sentence was going to be, other than that it could be no less than the five-year minimum mandatory, because the

---

[3] Defendant was not charged with creation of the child pornography he created and possessed (*see* PSR at 8).

presentence investigation had not been completed, and that he should have no expectations about his sentence (*id*. at 15–16).  The court reiterated that Defendant would not be able to withdraw his plea if he was dissatisfied with his sentence after it was imposed (*id*.).  Again, Defendant acknowledged that he understood (*id*.).

The court asked Defendant whether he needed any further explanation or clarification regarding the legal elements that the Government would be required to prove if his case were to go to trial, and he responded that he did not (doc. 42 at 18).  Defendant acknowledged that he had done what the Government had said he had done in the statement of facts in support of the plea (*id*.; doc. 24).[4]  The court explained that there was no parole in the federal system, and that any period of incarceration would be followed by a term of supervised release, which in Defendant's case was up to a life term (doc. 42 at 19).  The court inquired whether Defendant was satisfied with his attorney, and Defendant indicated that he was (*id*. at 19–20).  It then told Defendant, yet again, that he did not have to enter a guilty plea at that time if he wished to go to trial, and also told him again that once he entered the plea, he could not withdraw it (*id*. at 20).  Defendant stated that he understood (*id*.).  Defendant then entered a plea of guilty as to each count of the indictment, and the court accepted these pleas (*id*. at 21).

The PSR was disclosed to the defense on May 26, 2009 (doc. 27).[5]  The two counts were grouped for sentencing.  Defendant's adjusted offense level was 44, after multiple adjustments and a cross reference were applied (*see* PSR ¶¶ 52–64).  Defendant received a three-level adjustment for acceptance of responsibility due to his timely guilty plea, and his total offense level was thus 41 (PSR ¶¶ 65–68).  Defendant had a criminal history category of I.  The applicable guidelines range was therefore 324 to 405 months, initially; it became 324 to 360 months, however, as 360 months

---

[4] According to the facts in support of the plea (doc. 24), a search was conducted on Defendant's home after law enforcement learned that an Internet Protocol (IP) address associated with Defendant's physical address was displaying a plethora of child pornography titles on multiple occasions.  Post <u>Miranda</u>, Defendant admitted to receiving and downloading child pornography via the Internet.  Forensic examination of Defendant's electronic media revealed that Defendant possessed a "significant amount" of child pornography videos and still images that had traveled in interstate commerce via the Internet.  Law enforcement also found a digital camera disk containing images of Defendant's biological minor daughter engaged in sex acts with Defendant, and Defendant admitted that the images were of him and his daughter (doc. 24 at 1–2).

[5] The PSR and objections thereto are sealed exhibits A and B to the Government's response (doc. 59).

was the total term of incarceration that could be imposed (i.e., 20 years on Count One followed by 10 years on Count Two) (PSR ¶¶ 131–132).

Defense counsel filed written "clarifications" to the PSR but did not file formal objections due to Defendant's desire to accept responsibility for his conduct and not subject his minor daughter to any further harm or engage in litigation about his conduct (doc. 59, exh. B). Counsel noted that because of this, his client had no desire to pursue an objection to the cross reference, despite the fact that it resulted in a two-level difference in the guidelines range (*id.*).

At sentencing, the court noted that if the defense "clarification" had been a formal objection to the application of the cross reference (*see* PSR ¶63 (applying cross reference, as set forth in U.S.S.G. §§ 2G2.2(c)(1), 2G2.1)), this objection would have been overruled as it was factually appropriate due to information contained within the victim impact statement (doc. 43 at 8). In speaking on his client's behalf at sentencing, defense counsel noted that the psychosexual risk assessment that was prepared prior to sentencing[6] suggested that Defendant presented a very low risk of recidivism (*id.* at 9). There was a lengthy discussion of the report and the court's concerns about recidivism because, in reaching the conclusion that Defendant was "low risk," the report did not appear to take into account that Defendant had engaged in sexual violence with a biologically-related victim over a period of years (*id.* at 10–19). Counsel asked for a low guidelines sentence or a sentence around 20 years, citing numerous factors including Defendant's military background, prior experiences, work history, amenability to treatment, cooperation with the Government (by not "push[ing] this to a trial"), and age, as well as the restrictions that would be imposed upon him when he was released (*id.* at 20–22). Defendant also gave a statement to the court in which he admitted and apologized for his conduct (*id.* at 23–26).

The court ultimately afforded very little weight to the psychosexual risk assessment (doc. 43 at 30–31). It noted the aggravated seriousness of Defendant's conduct, even as compared with other child pornography cases, and imposed the maximum sentence it could impose under the law:

---

[6] The actual report is not part of the record, although the defense requested that it be attached to the PSR (*see* doc. 43 at 5).

a term of 240 months imprisonment as to Count One and 120 months as to Count Two, with the term imposed on Count Two to run consecutive to the term imposed on Count One, followed by a life term of supervised release (*id*. at 32–34). The court made clear its belief that in light of the circumstances of Defendant's case, this statutory maximum sentence was the only sentence it could impose that would allow it to uphold its duty to protect the public and punish and deter (*id*. at 33). The defense objected to the sentence, asserting it was far greater than necessary under the 18 U.S.C. § 3553(a) factors given Defendant's history and characteristics, the fact that he had no prior criminal history, and the "unrebutted submissions of Dr. Shaw [who prepared the psychosexual risk assessment], which were only rebutted by lay opinions" (*id*. at 40–41).

Defendant appealed, and appointed counsel Chet Kaufman of the office of the Federal Public Defender filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). The Eleventh Circuit's independent examination of the entire record revealed no arguable issues of merit, and on April 23, 2010, it granted counsel's motion to withdraw and affirmed Defendant's convictions and sentences (doc. 49).

In the present motion, Defendant raises six grounds for relief, two of which are interrelated. The Government opposes the motion in its entirety.

**LEGAL ANALYSIS**

<u>General Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must

be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694

F.3d, 1, 8 (11th Cir. 2012). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two-part test also applies to guilty pleas. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id*. at 1384–85 (quoting Hill, 474 U.S. at 59). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466

U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth

Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

Grounds One and Three

Defendant contends in his first and third grounds for relief that appellate counsel was constitutionally ineffective in that he failed to consult with Defendant prior to filing the appeal. Defendant claims that counsel should have consulted with him about the issues Defendant wished to raise on appeal, and as such counsel was constitutionally ineffective.  It appears from Defendant's arguments that he may have confused counsel's having filed an Anders brief with having filed no appeal (*see, e.g.*, doc. 56 at 3 (stating, with respect to ground one, that counsel contacted Defendant after an Anders brief had been filed, at which time Defendant "learned [that] 'no' appeal had been filed").  This is certainly not the case, and, as noted above, the Eleventh Circuit conducted an independent review of the record and found no arguable issues of merit (doc. 49).

In his reply memorandum, Defendant identifies the following four issues that he wanted counsel to raise on appeal:  (1) his 360-month sentence, comprised of two consecutive, statutory

maximum sentences for the two offenses, constituted impermissible multiple punishment for the same offenses; (2) his convictions violated double jeopardy; (3) the application of certain guidelines enhancements was improper; and (4) Defendant wanted to withdraw his plea, as it was not knowing and intelligent.  The first two issues are legally without merit, as Defendant was convicted of two separate wrongs, as discussed *infra* in this Recommendation with respect to Ground Six of Defendant's § 2255 motion.

Defendant's suggestion that he wanted to challenge the application of guidelines enhancements or withdraw his guilty plea is in contrast to representations made to the court at the time of his plea and sentencing.  In counsel's response to the PSR, he indicated that Defendant did not challenge any of the guidelines calculations at sentencing, because he "[did] not want to subject his minor child to any additional exposure in this case.  Nor d[id] he want any litigation as to his conduct" (doc. 59, exh. B at 2; PSR Addendum ¶ 159).  Counsel also noted at sentencing that Defendant did not want to expose his daughter to any additional harm beyond that he had already caused (*see* doc. 43 at 22–23).  Appellate counsel notes in his affidavit that he explained to Defendant that he considered but did not raise the guidelines "cross-reference" issue on appeal because a successful argument would have caused the district court on remand to perform a factual evaluation of Defendant's intent in taking his daughter to Hawaii,[7] which in all likelihood would have required his daughter's participation at a hearing on the issue (doc. 59, exh. D at 4).

Finally, Defendant's conclusory claim that his plea was not voluntary and intelligent is not supported by the record.  The Rule 11 colloquy, as detailed above, was thorough and complete, and Defendant was advised on multiple occasions that he did not have to enter a guilty plea at that time.  Because these issues had no merit, they do not support a claim of ineffective assistance of counsel on appeal.  *See* Brown, 720 F.3d at 1335 ("there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim") (citing Nyhuis, 211 F.3d at 1344)); Pacheco

---

[7] The images depicting sexual conduct between Defendant and his minor daughter were created when Defendant took his daughter to Hawaii for a vacation in or about December 2006, when his daughter was approximately eleven years old (*see* PSR ¶¶ 32, 33).  Although Defendant told law enforcement that he and his daughter engaged in sexual acts only on this vacation in Hawaii, and they never talked about it again (PSR ¶ 34), his daughter revealed to law enforcement that her father had been hurting her for a long time and had forced her to engage in sexual contact with him on other occasions (PSR ¶ 37).  There is no indication that Defendant photographed any instance of abuse other than those instances that occurred in Hawaii.

v. Dugger, 850 F.2d 1493, 1495 (11th Cir. 1988) (failure to raise meritless claims on direct appeal does not support a claim of ineffective assistance of appellate counsel). Defendant is not entitled to relief.

Ground Two

Defendant next contends that the district court erred in sentencing. A claim of sentencing error was ripe for review on appeal and is procedurally barred, absent a showing of cause and prejudice. Defendant claims that his sentence violated United States v. Booker, 543 U.S. 220 (2005) and was procedurally unreasonable due to the application of the sentencing enhancements that he previously chose not to challenge. Defendant's claim is procedurally barred, as he waived his opportunity to make sentencing challenges in a professed attempt to protect his minor daughter from further harm.

Defendant also claims that the district court misapplied § 5G1.2 of the guidelines. This assertion is also procedurally barred and without merit. This section provides guidance for sentencing in a case involving multiple counts of conviction. Nothing in this guideline prevented the court's imposition of consecutive sentences under the facts of this case. There was no district court error and, correspondingly, Defendant is not entitled to relief.

Ground Four

Defendant asserts that counsel was constitutionally ineffective during the pre-plea stage of the proceedings because counsel misadvised Defendant about his sentencing exposure. Even if counsel provided misadvice, Defendant cannot show prejudice due to the detailed information imparted to him by the district court during the plea colloquy.

As discussed *supra*, during Defendant's rearraignment, the court advised Defendant of the general range within which his sentence would fall, noting that its discretion in sentencing was limited by the mandatory minimum sentence on Count One as well as the statutory maximums under both statutes (doc. 42 at 14). The following detailed exchange then took place about Defendant's sentencing exposure:

> THE COURT:   Also, because you're charged in two separate counts and your guilty pleas today, should you enter them, will be as to separate counts. Your sentence can be run consecutively. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Because it is the maximum on each statute separately?

THE DEFENDANT: Yes, ma'am.

THE COURT: So that's just something to keep in mind about sentencing as well. No one today here in the courtroom before you enter your plea is going to be able to tell you what your sentence is going to be. We don't know. I don't know. Mr. Lockhart doesn't know, and Mr. Goldberg doesn't know, and Mr. Newsome from probation doesn't know. The reason no one can tell you that today other than that five year minimum mandatory is that the presentence investigation hasn't been conducted. That investigation will be conducted. Once you enter your plea, I'll order that to be conducted, and there will be a report prepared and returned to me. That report will contain a great deal of information about you and your background, and it will contain a great deal of information about the nature and circumstances of this offense and any relevant conduct related to your commission of this offense.

From that report, that guideline range will be calculated and from the information in the report, largely from that information, the Court will decide on the appropriate sentence. That hasn't been done. We don't know what those facts are, so no one right now can tell you right now what your sentence is going to be.

Because no one can tell you that, you should have no expectation before you enter your plea about [sic] your sentence will be other than the minimum mandatory that exists.

As a result, I want to make sure you understand because you should have no expectation about what your sentence will be, you will not be able to withdraw your plea if you are unhappy with your sentence after it is imposed. Do you understand that?

THE DEFENDANT: Yes, ma'am, I understand.

THE COURT: In no event would that be a basis upon which to withdraw your plea.

THE DEFENDANT: Yes, ma'am.

> THE COURT: Regardless of what Mr. Lockhart may have told you about your sentence or anyone else. Do you understand?
>
> THE DEFENDANT: Yes, ma'am.

(Doc. 42 at 15–16). Thus, even if counsel had previously advised Defendant differently, as Defendant claims in his affidavit (doc. 65, exh. A), he cannot show prejudice because the court fully apprised him of the potential sentence he faced before he entered his guilty plea. Furthermore, if Defendant was displeased with what he learned about his potential sentencing exposure, the record also reflects that the court advised Defendant several times, including immediately before he entered his guilty plea, that he did not have to enter a guilty plea and could proceed to trial instead (*see* doc. 42 at 20). He pleaded guilty nonetheless.[8]

Defendant also contends that counsel was constitutionally ineffective because he failed to move for a Bill of Particulars. Counsel was not constitutionally ineffective for failing to make such a motion as the indictment set forth the nature of the offense conduct. Neither the number nor the identities of the victims needed to be included in the charging document, and Defendant has not shown that he was prejudiced by the failure to include more specific information in the indictment. Defendant is not entitled to relief on this claim.

<u>Ground Five</u>

Defendant contends that counsel's performance at sentencing was constitutionally deficient in several respects, and he identifies different deficiencies in his motion and his reply memorandum (*see* doc. 56 at 5; doc. 65 at 16–17).

---

[8] In his reply memorandum Defendant attempts to supplement his claim by identifying six issues about which counsel failed to inform him (doc. 65 at 15). Defendant is factually or legally mistaken with respect to each, and he has not shown that counsel was constitutionally ineffective. First, Defendant's exposure to consecutive sentences and the general operation of the sentencing guidelines were covered by the district court during the plea colloquy (issues (1), (2), and (5)). Therefore, even if counsel failed to inform him of such (an allegation that is refuted by counsel's affidavit and case notes (doc. 59, exh. C)), there was no resulting prejudice. Next, Defendant did not plead guilty to sexual contact involving his minor daughter, which, while certainly criminal, was not the crime charged in the indictment in this case. It was Defendant's memorializing of the acts and possession of the resulting unlawful images which provided the basis for his conviction on Count Two in this case (issue (3)). Because the offenses charged in Counts One and Two were based on different actions, prosecution and conviction of both offenses were constitutionally permissible, and counsel did not provide misadvice on this issue (issue (4)). Finally, Defendant did not waive his right to pursue § 2255 relief by entering a guilty plea (issue (6)).

First Defendant contends that counsel failed to use the favorable psychological evaluation to argue for a downward departure. The psychosexual risk assessment was the subject of detailed discussion at sentencing (doc. 43 at 9–19). Despite counsel's arguments on Defendant's behalf, the court declined to credit the conclusions therein, believing that it did not adequately consider Defendant's conduct with his daughter in characterizing Defendant as a "low risk" for recidivism (doc. 43 at 30–31).

Defendant asserts that counsel was ineffective because he failed to move for a downward departure under U.S.S.G. § 5K2.13. This section of the guidelines is a policy statement that provides that a downward departure may be warranted if the defendant suffers from diminished mental capacity and that reduced mental capacity contributed to the commission of the offense. There is no record evidence upon which to base such a departure, and Defendant offers none.

Defendant also contends that counsel failed to object to "misapplications and calculations of his sentence that exceeded the statutory maximum" and to "preserve errors for appeal." Defendant's assertion that his sentence exceeded the statutory maximum is mistaken. He was sentenced to precisely the statutory maximum as to each count. Furthermore, with respect to preservation of alleged errors, the defense response to the PSR reflected that Defendant conceded the cross reference and did not "want any litigation as to his conduct" (doc. 59, exh. B). This information was reflected in paragraph 159 of the addendum to the PSR, which addendum counsel reviewed with his client before sentencing (doc. 43 at 2). Defendant did not dispute this in his remorseful remarks to the court (doc. 43 at 23–26). Defendant cannot now be heard to fault counsel for taking the position that he told counsel to take at the time.

<u>Ground Six</u>

Defendant's final claim for relief is that counsel was constitutionally ineffective because he failed to move for dismissal of the indictment on Double Jeopardy grounds.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The issue of double jeopardy is analyzed pursuant to the test set forth in <u>Blockburger v. United States</u>, 284 U.S. 299 (1932). "Under <u>Blockburger</u>, when a single, completed criminal transaction violates two or more criminal statutes, the Double Jeopardy Clause does not shield a defendant against prosecution . . . so long as

'each statute requires proof of an additional fact which the other does not.'" United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008) (quoting Blockburger, 284 U.S. at 304).  On the other hand, where a defendant has been charged with multiple crimes, one of which is a lesser-included offense of another charged crime, the Double Jeopardy Clause protects that defendant from being convicted of both crimes.  *See* Rutledge v. United States, 517 U.S. 292, 306 (1996); United States v. Bobb, 577 F.3d 1366, 1371 (11th Cir. 2009).

     As was succinctly reiterated by the Government at sentencing, the two counts of the indictment addressed separate harms.  Count One of the indictment addressed Defendant's downloading of child pornography images over a period of time.  Count Two addressed the possession of child pornography that Defendant himself created when he traveled to Hawaii with his daughter, photographed himself and his daughter engaging in various sexual acts, and transported the images back to the Northern District of Florida (doc. 43 at 26–27).  Defendant is correct that some of the child pornography in his possession arguably could have been encompassed within either Count One or Count Two, because possession of child pornography in violation of § 2252A(a)(5)(B) is, under many circumstances, a lesser included offense of receipt of child pornography in violation of § 2252A(a)(2).  Bobb, 577 F. 3d at 1374 (citing United States v. Miller, 527 F.3d 54 (3d Cir. 2008)).  There is no double jeopardy violation, however, if a defendant's convictions under two seemingly overlapping statutes involve different conduct.  Bobb, 577 F.3d at 1375.  In this case, Defendant created, rather than downloaded via computer, the images he possessed depicting himself and his minor daughter; there is no evidence that the images were ever transmitted via computer.  Thus, these particular images could not have been used to support his conviction on Count One.  The law is clear that because the counts included different facts or elements, the indictment was not multiplicitous and there was no double jeopardy violation.  *See* United States v. Woods, 684 F.3d 1045, 1061 (11th Cir. 2012) (noting that charges were not duplicitous when "[n]othing in the indictment indicated that the same images underlying the receipt count underlie the possession counts"); Bobb, 577 F.3d at 1366 (affirming separate convictions for receipt and possession of child pornography due to different dates of the offenses); United States v. Edens, 647 F. Supp. 2d 1311 (M.D. Ala. 2009), *aff'd* United States v. Edens, 380 F. App'x 880 (11th Cir. 2010), *cert. denied*, Edens v. United States, 131 S.Ct. 902 (2011) (no double jeopardy

violation for separate convictions for receipt and possession of child pornography because, despite the existence of overlapping evidence, there was sufficient non-overlapping evidence to sustain conviction on both counts); *see also* United States v. Morin, 417 F. App'x 885 (11th Cir. 2011) (use of different images supported separate convictions of distribution of and receipt of child pornography); United States v. Harper, 398 F. App'x 550, 554 (11th Cir. 2010) (finding no double jeopardy violation in convictions for possessing and receiving child pornography, noting that the government's proffer demonstrated its intent to prove facts necessary to establish both offenses; also noting "where it is unclear whether the indictment charges the defendant with distinct offenses, we must conclude that no double jeopardy violation appears on its face").  Therefore counsel was not constitutionally ineffective for his failure to object.

      Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2255 Proceedings.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection

to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this Report and Recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The amended motion to vacate, set aside, or correct sentence (doc. 56) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 4th day of June 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** United States v. Roberts, **858 F.2d 698, 701 (11th Cir. 1988).**